UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KIRYAT BELZ JERUSALEM,

        Plaintiff,

v.

MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY,

        Defendant.

**MEMORANDUM & ORDER**
20-CV-05810 (HG) (TAM)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Kiryat Belz Jerusalem ("Kiryat Belz") brings this action against Defendant Massachusetts Mutual Life Insurance Company ("MassMutual") pursuant to 28 U.S.C. § 1332 for: (i) breach of contract; (ii) breach of the implied covenant of good faith and fair dealing; and (iii) a declaratory judgment that Plaintiff is entitled to death benefits under two life insurance policies. Presently before the Court is Defendant's motion for summary judgment seeking dismissal of the complaint. ECF Nos. 29, 32, 33. For the reasons set forth below, Defendant's motion for summary judgment is granted.

## BACKGROUND

Kiryat Belz is a charitable organization located in Brooklyn, NY, supported by the Belz community. *See* Plaintiff's Opposition to Defendant's Rule 56.1 Statement ("Pl.'s 56.1"),[1] ECF No. 32-5 at 1. "In order to pay back various debts that the organization incurred from members of the community, Kiryat Belz solicited donations of the beneficial interests in life policies that were owned by members of the community." *Id.* at 2. Through this program, members of the

---

[1] Unless otherwise specified, the Court cites to the undisputed statements of fact in Plaintiff's Opposition to Defendant's Rule 56.1 Statement. *See* ECF No. 32-5.

Belz community donated their life insurance policies to Kiryat Belz. Following the donor's death, some or all of the death benefit under the donated policy would be distributed to Kiryat Belz. *Id.* In exchange, Kiryat Belz agreed to pay the insurance premium on behalf of the donors. *Id.*

On July 2, 2007, MassMutual issued a Flexible Premium Adjustable Life Insurance Policy ("Policy No. 84") insuring the life of non-party Magdalena Knopfler. Kiryat Belz was a partial beneficiary under the policy. *Id.* at 3. Policy No. 84 provided a death benefit of $600,000 and required a "planned periodic premium" of $5,700, payable quarterly. *Id.* On September 4, 2007, MassMutual issued a second Flexible Premium Adjustable Life Insurance Policy ("Policy No. 27"), insuring the life of Ms. Knopfler and again listing Kiryat Belz as a partial beneficiary. *Id.* at 4. Policy No. 27 provided a death benefit of $350,000 and required a "planned periodic premium" of $3,400, payable quarterly. *Id.* at 4. In January 2008, Kiryat Belz "took over ownership and control" of Policy No. 84 and Policy No. 27 (together, "Policies") and was thereafter "responsible for paying the premium for both Policies." *Id.* at 5.

The Policies had a flexible payment structure—this permitted Kiryat Belz to pay into a premium account when it chose, rather than requiring it to make premium payments on a specific date. The Policies remained effective so long as each policy maintained a sufficient account value to pay the monthly premium. *Id.* at 5; *see also* Flexible Premium Life Adjustable Life Insurance Policy Application Materials for Policy No. 84, ECF No. 30-3 at 3 ("After the first premium has been paid, there is no requirement that any specific amount of premium be paid on any date. Instead, within the limits stated in the policy, any amount may be paid on any date during the lifetime of the Insured."); ECF No. 30-4 at 4 (identical language with respect to Policy No. 27). However, if the account value was insufficient to cover the monthly premium, the

2

policy risked being terminated and entered a grace period during which the policyholder was given 61 days to pay the past due premium. *See* ECF No. 30-3 at 7 ("This policy [Policy No. 84] may terminate without value if, on any Monthly Charge Date, the account value is not sufficient to cover the monthly charges due. . . . However, we allow a grace period for payment of the amount of premium . . . needed to avoid termination. The grace period begins on the date the monthly charges are due. It ends 61 days after that date or, if later, 31 days after [MassMutual] mail[s] a written notice to the Owner and to any assignee shown in our records at their last known addresses."); ECF No. 30-4 at 7 (identical language with respect to Policy No. 27). If MassMutual did not receive the required premium by the end of the 61-day grace period, it could terminate the policy. *Id.* Both Policies "provided that MassMutual would 'credit each net premium to the account value of th[e] policy on the date [MassMutual] *receive[s]* the premium payment.'" ECF No. 32-5 at 6 (alterations in original) (emphasis added).

On June 5, 2019, MassMutual sent a notice to Kiryat Belz at its mailing address stating that "life insurance [Policy No. 27] is in danger of terminating" and "is in its grace period as a result of not having met the required premium or account value to keep the policy in force." ECF Nos. 30-19 at 2 (Special Notice), 32-5 at 20. The notice warned that if a premium of $4,099.85 was not received by August 6, 2019, Policy No. 27 would be terminated. ECF Nos. 30-19 at 2 (Special Notice), 32-5 at 20. On July 8, 2019, MassMutual sent a second notice to Kiryat Belz indicating that it had not received the premium payment necessary to keep Policy No. 27 in effect and once again warned Plaintiff that the policy was in danger of being terminated on August 6, 2019. ECF Nos. 30-20 at 2 (second Special Notice), 32-5 at 21. Defendant alleges (and Plaintiff does not dispute) that it did not receive the premium payment necessary to keep the policy in force by August 6, 2019 and, thereafter, sent Kiryat Belz a

termination letter on that date, "explaining that coverage had expired because there was insufficient value to cover the monthly charges." ECF Nos. 32-5 at 21–22, 30-21 at 2 (Termination Notice).

With respect to Policy No. 84, MassMutual sent Kiryat Belz an annual policy statement, "which provided that if no further premiums were paid after July 2, 2019, [Policy No. 84] would terminate without value on that date." ECF Nos. 32-5 at 12, 30-15 at 5 (Policy No. 84 Annual Report). On July 3, 2019, as it did with Policy No. 27, MassMutual sent a notice to Kiryat Belz at its mailing address stating that "life insurance [Policy No. 84] is in danger of terminating" and "is in its grace period as a result of not having met the required premium or account value to keep the policy in force." ECF Nos. 30-16 at 2 (Special Notice), 32-5 at 13. The notice warned that if a premium of $6,836.46 was not received by September 6, 2019, Policy No. 84 would be terminated. ECF Nos. 30-16 at 2 (Special Notice), 32-5 at 13. On August 8, 2019, MassMutual sent a second notice to Kiryat Belz indicating that it had not received the premium payment necessary to keep the Policy No. 84 in effect and once again warned that the policy was in danger of being terminated on September 6, 2019. ECF Nos. 30-17 at 2 (second Special Notice), 32-5 at 14. Defendant alleges (and Plaintiff does not dispute) that it did not receive the premium payment necessary to keep the policy in force by September 6, 2019 and, thereafter, sent Kiryat Belz a termination letter "explaining that coverage had expired because there was insufficient value to cover the monthly charges." ECF Nos. 32-5 at 15, 30-18 at 2 (Termination Notice).

MassMutual alleges that it received a check in the mail on November 13, 2019, for $6,836.46 from Kiryat Belz intended for Policy No. 84. ECF No. 32-5 at 25. The check was dated July 15, 2019. *Id.*; ECF No. 30-23 at 2 (image of check). MassMutual further alleges it received a second check in the mail on November 14, 2019, for $4,099.85 from Kiryat Belz

4

intended for Policy No. 27. ECF No. 32-5 at 25. That check was also dated July 15, 2019. *Id.*; ECF No. 30-22 at 2 (image of check). Kiryat Belz alleges that both checks "were sent via regular mail within a week of the date given on the checks and has no knowledge as to what caused any delay in the receipt of the checks." ECF No. 32-5 at 25–26. On the days the checks were received, "MassMutual's system attempted to apply the payments, but a rejection notice was automatically generated by the system after the payment was rejected" because both Policies had already been terminated on August 6, 2019 (Policy No. 27), and September 6, 2019 (Policy No. 84). ECF No. 32-5 at 29. MassMutual immediately returned the two checks to Kiryat Belz. ECF No. 32-5 at 30.

On December 19, 2019, a Kiryat Belz representative called MassMutual to inquire about the process for reinstating both Policies. ECF No. 32-5 at 30. MassMutual emailed the representative explaining the reinstatement process and attaching the necessary documents. *Id.*; ECF No. 30-33 at 2 (email between MassMutual and Kiryat Belz). Kiryat Belz never submitted a reinstatement application. ECF No. 32-5 at 30. On April 6, 2020, Ms. Knopfler passed away. ECF Nos. 32-5 at 30, 30-34 at 2 (death certificate). On June 11, 2020, Kiryat Belz submitted a claim for death benefits under both Policies. ECF Nos. 32-5 at 31, 30-35 at 2 (Life Insurance Claim Form). MassMutual did not pay the death benefit for either policy because the Policies had lapsed prior to Ms. Knopfler's death. ECF No. 32-5 at 31.

On December 1, 2020, Plaintiff filed the instant complaint. On June 21, 2022, Defendant filed its motion for summary judgment. ECF No. 28. On July 19, 2022, Plaintiff filed its opposition. ECF No. 32. On July 29, 2022, Defendant filed its reply. ECF No. 33.

## **LEGAL STANDARD**

5

The interpretation of an insurance policy presents a question of law that can appropriately be resolved through a motion for summary judgment. *See Vam Check Cashing Corp. v. Fed. Ins. Co.*, 787 F. Supp. 2d 264, 267 (E.D.N.Y. 2011). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).

In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). In reviewing the evidence and inferences that may reasonably be drawn, the court "may not make credibility determinations or weigh the evidence . . . . Credibility determinations . . . [are a] jury function[ ], not [that] of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and internal quotation marks omitted). Nevertheless, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

# DISCUSSION

Defendant argues that it is entitled to summary judgment for the following reasons: (i) the breach of contract claim fails as a matter of law because Defendant did not receive the necessary premium payments for the Policies until after they had lapsed; (ii) the claim for breach of the implied covenant of good faith and fair dealing is duplicative of Plaintiff's breach of contract claim; and (iii) the declaratory relief claim fails because the requested relief necessarily overlaps with the issues to be resolved in the litigation. The Court agrees and grants Defendant's motion for summary judgment in its entirety.

### I.  Defendant's Motion for Summary Judgment on Plaintiff's Breach of Contract Claim Is Granted

"A federal action based upon diversity jurisdiction, brought to recover under an insurance policy, is governed by state law." *Vam Check*, 787 F. Supp. 2d at 268. Neither party disputes that New York law applies here. *See* ECF Nos. 29 at 15, 32 at 8. "Under New York law, 'an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.' If the contract language is 'clear and unambiguous,' courts will simply enforce the contract 'as written.' On the other hand, 'if the policy language is ambiguous, . . . the ambiguity must be interpreted in favor of the insured.'" *Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co.*, No. 20-cv-2777, 2021 WL 1091711, at *3 (E.D.N.Y. Mar. 22, 2021) (quoting *Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995)).

Plaintiff alleges that the Policies constitute valid contracts and Defendant was under a duty to provide the death benefits to Plaintiff, but unlawfully refused to do so. ECF No. 1 ¶¶ 23–27. The undisputed facts show that: (i) the terms of the Policies provide that MassMutual would "credit each net premium to the account value of th[e] policy on the date [MassMutual]

*receive[s]* the premium payment," ECF No. 32-5 at 6 (emphasis added) (alterations in original); (ii) both Policies provide that "[m]onthly charges are deducted from the value of th[e] policy each month. If the value cannot cover the monthly charges for a month, the policy may *terminate* 61 days after the due date," *id.* at 12, 18 (emphasis added); (iii) Defendant sent Plaintiff initial grace-period notices dated June 5, 2019 and July 3, 2019 warning Plaintiff that each policy "is in its grace period as a result of not having met the required premium or account value to keep the policy in force" and that if MassMutual did not receive payment by August 6, 2019 and September 6, 2019, the policies would be terminated, ECF Nos. 30-16 at 2 (Special Notice for Policy No. 84), 30-19 at 2 (Special Notice for Policy No. 27); (iv) MassMutual sent a second round of notices on July 8, 2019 and August 8, 2019, once again warning Plaintiff that if Defendant did not receive the necessary premium payments, the Policies would terminate, on August 6, 2019 and September 6, 2019, ECF Nos. 30-17 at 2 (second Special Notice for Policy No. 84), 30-20 at 2 (second Special Notice for Policy No. 27); (v) on August 6, 2019, 62 days after it sent its initial grace-period notice regarding Policy No. 27, Defendant sent Plaintiff a letter informing it that "the coverage provided by [Policy No. 27] has expired because there was not sufficient value to cover the June 4, 2019 monthly charges," ECF No. 30-21 at 2 (Termination Notice); (vi) on September 6, 2019, 65 days after it sent its initial grace-period notice regarding Policy No. 84, Defendant sent Plaintiff a letter informing it that "the coverage provided by [Policy No. 84] has expired because there was not sufficient value to cover the July 2, 2019 monthly charges," ECF No. 30-18 at 2 (Termination Notice); and (vii) for reasons unbeknownst to Plaintiff, Defendant did not receive the payments for Policy No. 84 until November 13, 2019 and Policy No. 27 until November 14, 2019, *see* ECF No. 32-5 at 25.

8

Defendant argues that Plaintiff's breach of contract claim fails as a matter of law because the unequivocal terms of the Policies establish that a premium payment must be received by MassMutual prior to the end of the grace period, which did not occur here. ECF No. 29 at 16–18. The Court agrees that the language of the Policies is clear and unambiguous: the Policies require receipt of the premium prior to the end of the grace period. Plaintiff argues that it "has consistently testified that payments pursuant to any applicable grace-period notices were sent within a week of the date given on the relevant checks" and that "issues of fact remain as to when and where [the checks] were actually received and deposited by MassMutual." ECF No. 32 at 10–11. This argument is unpersuasive. Plaintiff does not dispute that Defendant received the checks after the Policies were terminated. Rather, it merely alleges that "the checks were sent via regular mail within a week of the date given on the checks and [Plaintiff] has no knowledge as to what caused any delay in the receipt of the checks." ECF No. 32-5 at 25–26. The Policies, however, unambiguously provide that MassMutual would credit the accounts on the date it *received* the insurance premium payments. ECF No. 32-5 at 6. As such, MassMutual was entitled to terminate the Policies and the dates reflected on the checks are of no consequence. *See Zamora-Leon v. United of Omaha Life Ins. Co.*, No. 15-cv-9206, 2017 WL 4155403, at *5 (S.D.N.Y. Sept. 18, 2017) (granting summary judgment to insurer where it did not *receive* premium prior to due date and finding that language of policy controlled).

Plaintiff further argues that Defendant did not comply with the requirements of New York Insurance Law § 3203(a)(1) because the "notices that the Policies have entered a grace period were ambiguous and thus defective." ECF No. 32 at 3. Under New York law, where life insurance policies have flexible payment arrangements, as is the case here, "after payment of the first premium, the policyholder is entitled to a sixty-one day grace period, beginning on the day

9

when the insurer determines that the policy's net cash surrender value is insufficient to pay the total charges necessary to keep the policy in force . . . ." N.Y. Ins. Law § 3203(a)(1) (2021). Plaintiff does not dispute that Defendant provided more than the 61-day grace period for each policy, *see* ECF No. 32-5 at 15, 22, but instead argues that it is not clear from the notices when the grace period began. *See* ECF No. 32 at 11 ("The presence of this ambiguity, and construing it in favor of Plaintiff, rendered the second notices defective and thus restarted the 61-day grace period."). The Court disagrees that it is not clear when the grace period began. Each of the initial notices clearly states: "**Your life insurance policy is in danger of terminating**. It is in its grace period as a result of not having met the required premium or account value to keep the policy in force." ECF Nos. 30-16 at 2 (Special Notice for Policy No. 84), 30-19 at 2 (Special Notice for Policy No. 27) (bold text in original). These notices are clearly dated, explain when the last premium was received, and provide that the Policies will terminate on August 6, 2019, and September 6, 2019, if the premium is not received. *Id.* The second notices provide, "[w]e have previously notified you that your policy is in its grace period. To date, we have not received a payment from you. As a result, **your life insurance policy is in danger of terminating**." ECF Nos. 30-17 at 2 (second Special Notice for Policy No. 84), 30-20 at 2 (second Special Notice for Policy No. 27) (bold text in original). The notices are also clearly dated and provide that if payment is not received by August 6, 2019, and September 6, 2019, the Policies will terminate. *Id.* From that evidence, Plaintiff could easily have deduced when the grace period began—no jury could reasonably find differently. *See Anderson*, 477 U.S. at 252.

      Nevertheless, even if the Court were to agree with Plaintiff that the notices are unclear, —which it does not—New York Insurance Law § 3203(a)(1) only requires that Plaintiff be provided with a 61-day grace period, it does not require that the information concerning the start

10

of the grace period be presented in a specific manner. *See Stein v. Am. Gen. Life Ins. Co.*, 34 F. Supp. 3d 224, 231 (E.D.N.Y. 2014) (finding that exact wording of a grace-period notice is not necessary "as long as the information intended to be provided is conveyed") (citation omitted). Defendant provided Plaintiff with a 62-day (Policy No. 27) and a 65-day (Policy No. 84) grace period. Based on these undisputed facts, the Court finds that Defendant was within its rights under the terms of the Policies to terminate the Policies and therefore grants Defendant's motion for summary judgment with respect to Plaintiff's breach of contract claim.

## II. Defendant's Motion for Summary Judgment on Plaintiff's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim Is Granted

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *GEICO Marine Ins. Co. v. Mandel*, No. 19-cv-3107, 2020 WL 6318948, at *10 (E.D.N.Y. Sept. 18, 2020) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013)). "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *GEICO Marine Ins.*, 2020 WL 6318948, at *10 (citation omitted). Plaintiff alleges that Defendant owed it a "duty to act in good faith and conduct fair dealing" and that Defendant breached that duty by causing the Policies to lapse and failing to provide any amount of the death benefits under the Policies. ECF No. 1 ¶¶ 32–33. This claim is premised on Defendant's alleged breach of contract for failing to provide the death benefits under the Policies. *Id.* ¶ 33. "No new or different allegations elaborate upon the basis for the implied covenant claim. Plaintiff also prays for the same damages, in identically-worded paragraphs, with respect to these claims." *Smith v. Home Depot U.S.A., Inc.*, No. 20-cv-4125, 2021 WL 4904572, at *4 (E.D.N.Y. Oct. 21, 2021); *compare* ECF No. 1 ¶ 29, *with id.* ¶ 34 (comparing identically worded paragraphs with

11

respect to damages in the complaint). *See also Jane St. Holding, LLC v. Aspen Am. Ins. Co.*, No. 13-cv-2291, 2014 WL 28600, at *10 (S.D.N.Y. Jan. 2, 2014), *aff'd*, 581 F. App'x 49 (2d Cir. 2014) ("When the alleged breach of the implied covenant of good faith and fair dealing is intrinsically tied to the damages allegedly resulting from the breach of the insurance contract, those claims are redundant.").

"As in all contracts, implicit in contracts of insurance is a covenant of good faith and fair dealing, such that a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims. However, an insurer is not liable in excess of the policy limits for the breach of an insurance contract absent bad faith." *Jane St.*, 2014 WL 28600, at *10 (citations and internal quotation marks omitted). Plaintiff implicitly alleges that Defendant acted in bad faith by terminating the Policies "without justification." ECF No. 1 ¶ 33. Plaintiff's claim rests solely on Defendant's refusal to pay the death benefits. "Mere difference of opinion between an insurer and an insured over the availability of coverage does not constitute bad faith; to show bad faith the insured must demonstrate that no reasonable carrier would, under the given facts deny coverage." *Jane St.*, 2014 WL 28600, at *10 (internal quotation marks omitted). Plaintiff has not "shown sufficient evidence or sufficiently pled allegations to support an inference of bad faith." *Id.* at *11. To the contrary, the undisputed facts show that MassMutual: (i) sent Plaintiff two notices with respect to each life insurance policy warning of possible termination, ECF No. 32-5 at 13–15, 20–22; (ii) terminated the Policies according to their express terms, *id.*; and (iii) sent Plaintiff information about reinstating the Policies after Plaintiff inquired, *id.* at 30. The allegations here present nothing more than a straightforward dispute over the terms of a contract, and fall well short of alleging bad faith. Accordingly, the Court finds

Plaintiff's breach of the implied covenant of good faith and fair dealing claim to be duplicative of its breach of contract claim and grants summary judgment dismissing the claim on this basis.

### III. Defendant's Motion for Summary Judgment on Plaintiff's Declaratory Relief Claim Is Granted

Plaintiff seeks a declaratory judgment that "there exists a valid agreement which designates Plaintiff as beneficiary of the life insurance polici[es of Magdalena Knopfler]." ECF No. 1 ¶¶ 37–38. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "In exercising its discretion over whether to adjudicate a declaratory judgment claim, a district court must determine (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Ambac Assurance Corp. v. U.S. Nat'l Assoc.*, No. 21-cv-70, 2021 WL 6060710, at *5 (2d Cir. Dec. 20, 2021) (internal quotation marks omitted).

"[C]ourts have found declaratory judgment to be inappropriate where a party has already invoked its right to a coercive remedy. Thus, courts have deemed [a] cause of action for a declaratory judgment [a]s unnecessary and inappropriate when the plaintiff has an adequate, alternative remedy in another form of action, such as breach of contract." *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, No. 16-cv-6370, 2017 WL 6729854, at *11 (E.D.N.Y. Oct. 31, 2017) (citations and internal quotation marks omitted) (alterations in original). Here, the Court finds that no useful purpose would be served by granting declaratory relief because this claim is duplicative of the breach of contract claim. *See Ambac*, 2021 WL 6060710, at *5 (affirming district court's dismissal of request for declaratory judgment which was duplicative of

13

breach of contract claim). Accordingly, the Court grants Defendant's motion for summary judgment on Plaintiff's declaratory relief claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

>*/s/ Hector Gonzalez*
>HECTOR GONZALEZ
>United States District Judge

Dated: Brooklyn, New York
       October 25, 2022

14